# Staunton.

## LOVETT'S ADMR. v. PERRY.

### SEPTEMBER 27, 1900.

### Absent, Buchanan* and Riely, JJ.

1. SETTLEMENTS—*Discharge of One Debt—Others Outstanding—Case in Judgment.*—The evidence in this cause does not justify the conclusion that the agreement of a grantee to pay to his grantor two thousand dollars in excess of a lien on the property held by the grantee, also extinguishes another large debt for money recently theretofore advanced to the grantor by the grantee, for the purpose of conducting business on the premises granted.

2. PARTNERSHIP—*Input—Individual Bond—Rights of Partners Inter se—Act of Limitations.*—In a controversy between partners, a partner who is to contribute nothing but his time, labor and skill, and who has no authority to contribute money, cannot hold his copartner liable for money borrowed on his own credit and placed in the business. The mere fact that the partnership received the benefit of the money borrowed and placed in the business, in derogation· of an express stipulation to the contrary between himself and his copartner, does not render the partnership liable therefor. If liable, however, at all, it could only be upon an implied contract growing out of the use of the money, the limitation to which is three years.

3. ACT OF LIMITATIONS—*Absence from State—Code, Section 2933.*—In the absence of any evidence that a defendant ever resided in the State, or that there has been any change of his residence, or that, in departing from the State he intended to obstruct, or did obstruct, the prosecution of any suit against him, the running of the statute of limitations is not stopped by section 2933 of the Code.

*Judge Buchanan was holding the Bar examination.

Appeal from a decree of the Circuit Court of Clarke county, pronounced May 29, 1899, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*Marshall McCormick & Son,* for the appellant.

*A. Moore, Jr.,* and *Barton & Boyd,* for the appellee.

KEITH, P., delivered the opinion of the court.

Emma M. Perry entered into a contract under seal with Tazwell Lovett, deceased, by which she agreed to advance to him the sum of $10,000, to be used in the erection and equipment of a steam flouring mill at Berryville, Va., and to further advance, if she could do so without inconvenience, the additional sum of $4,500, to be used in the business of manufacturing flour at that place. In the event that she did not advance the sum of $4,500 for carrying on the business, Tazwell Lovett was authorized to furnish such sums as he might think necessary, and upon the money so furnished by him, he was to be paid out of Miss Perry's share of the profits, interest at the rate of six *per cent. per annum.*

It was further agreed that, in case the profits payable to Miss Perry fell below eight *per cent.* upon the sum invested by her, she should have the privilege of terminating the contract, and of withdrawing the money advanced—that is, the sum of $10,000, and such sum in addition thereto, as she might have advanced for carrying on the business.

Miss Perry advanced the $10,000 to erect and furnish the mill, and the sum of $8,000 to be used in carrying on the milling business. On September 8, 1898, Tazwell Lovett sold and conveyed to Miss Perry an acre of ground situated in the town

of Berryville, together with the steam flouring mill and other improvements thereon. The consideration expressed in the deed is the sum of $2,000, to be paid by the grantee to the grantor, who covenanted that the property conveyed is free from encumbrances, save and except an encumbrance in favor of the party of the second part. The effect of this conveyance was to extinguish the loan of $10,000 made by Miss Perry to Tazwell Lovett, and to leave her under an obligation to him for the sum of $2,000. At various times during the progress of the milling business, which was conducted under the name of the T. Lovett Company Roller Mill, money was paid by Tazwell Lovett to Miss Perry, amounting in the aggregate to $2,881; the items composing this sum being generally small, the largest single item being for $150.

It appears that T. J. Lovett, a nephew of Tazwell Lovett, borrowed $1,000 from a Mrs. Dibbrell in the county of Loudoun, and a further sum of $1,000 from Mr. Hatcher, of that county. For these sums T. J. Lovett and Tazwell Lovett executed their bonds. In November, 1898, Tazwell Lovett died, and Miss Perry soon thereafter instituted a chancery suit for the recovery of the money advanced by her, amounting to $8,000, from his estate, upon which T. J. Lovett had qualified as administrator.

T. J. Lovett answered the bill, and in it makes several points not now insisted upon. He calls upon the plaintiff to produce the books showing the transaction in the milling business, which appears to have been done; so that this matter need not be again adverted to. He sets out that Tazwell Lovett, his decedent, borrowed of Hatcher $1,000, and a like sum from Dibbrell, being the sums already adverted to. He states that he became the surety for the several sums of money, and secured their payment upon the land owned by him in Loudoun county; that the money derived from these loans was used in the operation and maintenance of the mill, and is, therefore, a debt for which the complainant is responsible, if the assets should prove

insufficient for its payment.   He submits to the court that, inasmuch as these two sums were borrowed for milling purposes, he is entitled to be exonerated from their payment, and asks that his answer upon this subject be treated as a cross-bill.

The commissioner, who was directed to settle the accounts rendered necessary by the pleadings, reported to the court that Miss Perry had advanced to Tazwell Lovett, in his lifetime, in the aggregate, the sum of $8,000.   He further reports as a fact that Miss Perry received from Lovett the sum of $2,881.52.   He is of opinion, however, that it was paid to her as her share of the profits, and that therefore no part of it can be treated as payment upon the $8,000, shown to be due her.   He also refuses to charge Miss Perry with any part of the money borrowed from Dibbrell and Hatcher.

To this report exceptions were filed, and the Circuit Court held that the sum of $2,881 had been paid to Miss Perry by Tazwell Lovett during the partnership, not as profits, but should be credited as of the date of the decree on the sum of $8,000, allowed the complainant against the partnership.   The Circuit Court was further of opinion that the "two sums of $1,000, each, borrowed by defendant's intestate of Mrs. Dibbrell and Joshua Hatcher, are not the debts of the partnership, payable out of the money in the hands of the receiver, or hereafter to be collected by him, and if they were, they are barred by the statute of limitations pleaded by the complainant as a defence, but the court being of opinion that the said sums of money, borrowed as aforesaid, are to be treated as capital put in the business of the partnership by Tazwell Lovett, and to that extent he is a creditor of the partnership, doth so decide."

The result of the decree of the Circuit Court upon the points brought under review before us is, in brief, that it allows to Miss Perry the sum of $8,000, to be credited by the sum of $2,881.52, the further sum of $2,000 derived from Dibbrell and Hatcher, and $2,000, part of the consideration for the con-

veyance by Tazwell Lovett of the mill property conveyed to Miss Perry by deed of September 8, 1898, thus reducing her recovery to $1,118.18, which is charged upon certain moneys reported to be in the hands of the receiver of the court, the balance in his hands to be distributed between complainant and defendant, in the proportion of two-thirds to the former and one-third to the latter.

From this decree Lovett's administrator appealed, and the errors now insisted upon are, first, that by the deed of September 8, 1898, Miss Perry having undertaken to pay to Tazwell Lovett the sum of $2,000, that undertaking is to be considered as evidence of the settlement of all antecedent transactions between them.

For this proposition the case of *McRae* v. *Boast,* 3 Ran. 481, is cited. In that case a check was given by the plaintiff to the defendant, and many years thereafter the defendant executed a note to the plaintiff. It was held that it will be presumed that the check has been settled, or accounted for. "A check," said the court, "is a matter whose character is very equivocal. It may be given in payment of a debt due, or it may be given on a mere loan. Its character may be decided by the circumstances which attend or follow it. If the check in controversy had been given by Boast to McRae for a debt due by the former to the latter, and had not been settled or accounted for between the parties, it is very improbable that, at a period so long subsequent, McRae would have executed his own note to Boast, to be endorsed by Boast, for the accommodation of McRae. It is much more probable, that McRae would have taken Boast's note to himself, for the amount of the check. The giving his own note to Boast was, therefore, rightly determined to afford *prima facie* evidence, that the check had been settled or accounted for."

Upon the circumstances of that case the decision is a correct one. In the case before us, however, no such effect should be

attributed to the transaction. The conveyance was made in order to extinguish the obligation resting upon Lovett for the sum of $10,000, advanced in the erection and equipment of the mill. The price agreed upon was $2,000 in excess of that encumbrance. No other transactions appear to have been taken into consideration, and it would be a violent assumption to suppose that a debt of $8,000, recently advanced for the conduct of a business, which seems to have earned no profits, had been so speedily returned, when there is not a scintilla of evidence of the payment by Tazwell Lovett·to Miss Perry of any money except what is found in the account of $2,881, the items of which ranged from $1.22 to $150. The commissioner found against this contention, upon all the facts of the case presented in evidence before him. The court, upon this point, confirmed the report of the commissioner, and we discover no error in their conclusion in this respect.

We are of opinion that the Circuit Court properly admitted the credit of $2,881. That this sum was paid by Tazwell Lovett to Miss Perry is not denied. It is claimed, however, and that view was sustained by the commissioner, that she received it as part of her share of the profits. No account was settled of the partnership which would enable the court to determine with accuracy the result of the business conducted by the Tazwell Lovett Rolling Mill, but, from the whole record, it may be safely assumed that it did not produce a profit, but was, on the contrary, a disastrous failure. We shall not, therefore, disturb the decree of the Circuit Court upon this point.

It is assigned as error that the $2,000 borrowed in Loudoun county should have been allowed as a debt against the firm. To use the language of the appellant in his petition for an appeal, " if it is anything, it is a debt of the firm, and if not, then it is nothing," but the Circuit Court said: " If it be a debt of the firm, it is barred by the statute of limitations pleaded by the complainant," and in this view the Circuit Court was clearly

right. If the evidence shows that the loans made by Mrs. Dibbrell and Mr. Hatcher were made by Tazwell Lovett, with T. J. Lovett as his surety, the mere fact that the partnership received the benefit of the money does not make it a partnership obligation, as credit was not given to the partnership, but to Tazwell Lovett; nor was the partnership bound by the bonds given for these loans; and we are of opinion that if the firm is bound at all, it is upon the implied obligation growing out of the use of the money, the limitation to which would be three years.

Appellant seeks to avoid the effect of the statute of limitations by bringing himself within the operation of section 2933 of the Code which provides that, where a right has accrued "against a person who had before resided in this State, if such person shall, by departing without the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, the time that such obstruction may have continued, shall not be computed as any part of the time within which the said right might, or ought, to have been prosecuted."

It appears from the averments of the bill that, during the greater part of the time the flouring mill was being operated, Miss Perry was absent from the United States. It does not appear that she had before resided in this State. It does not appear that, in departing from the same, she intended to obstruct, or that she did obstruct, the prosecution of any suit against her. There was no change of residence upon her part. She travelled abroad for pleasure or business, and it appears from the record that she must have been frequently present in Berryville, notwithstanding the general averment of her bill. There was no formal pleading in the case. The statute of limitations was relied upon before the commissioner in chancery, and no replication was made to it. Considering all the questions, therefore, arising upon the statute, and the exceptions

relied upon in the light of the evidence, we are of opinion that the decision of the Circuit Court was right upon this point, and the statute of limitations is a bar to any recovery against the partnership of the money loaned by Mrs. Dibbrell and Joshua Hatcher and used, as it is claimed, in the business of the partnership.

Nor can we accept as true the position taken by the court with respect to the two sums of $1,000. By the terms of the agreement between Tazwell Lovett and Miss Perry, she undertook to furnish $4,500 with which to carry on the business upon which they were to enter. She advanced that sum and $3,500 in addition, and it was expressly covenanted between them that Lovett should only furnish money to the firm in the event that Miss Perry failed to make the advances which she promised, except in that event, his input into the business was to be his time, personal attention and skill. In the aspect of the case which we are now considering, we are not dealing with the rights of creditors of the firm, but of the partners *inter se;* and, as we have seen, Lovett, by the express terms of the agreement, was to contribute nothing but his time, labor and skill, and had no authority to contribute money to the conduct of the business, save in a contingency which did not arise, as Miss Perry not only furnished all that she promised, but proved better than her word, and advanced a large sum in addition thereto. There is no proof that she had any knowledge that any advance in money to the business had ever been made by Lovett, and there could, of course, have been no acquiescence or ratification on her part.

In *Nat. Bank* v. *Cringan,* 91 Va. 351, it is said: " It is not among the implied powers of a partner to bind his firm for his own share of the capital agreed to be subscribed. Says Mr. Justice Lindley: 'One of the implied powers of a partner, and one of the most important of his powers, is that of borrowing money on the credit of the firm; but this power, like every other

implied power, only exists where it is necessary for the transaction of the partnership business in the ordinary way; and consequently, if the money is borrowed by one partner for the declared purpose of increasing the partnership capital, or of raising the whole, or a part, of the capital agreed to be subscribed in order to start the firm  *  *  *  , the firm will not be bound unless some actual authority or ratification can be proved.' "

In this case there was no antecedent authority given, but it was distinctly denied by the terms of the agreement by which the partnership between Lovett and Miss Perry was created. If it is not among the implied powers of a partner to bind his firm for his share of the capital agreed to be subscribed, *a fortiori* he cannot bind the firm for capital placed by him in the business in derogation of an express stipulation to the contrary between himself and copartner.

We are of opinion, therefore, that the cross-error assigned by the appellee to so much of the decree of the Circuit Court as allows the two sums of $1,000 each, advanced in this suit by Mrs. Dibbrell and Joshua Hatcher, to be treated as capital put into the business by Tazwell Lovett, should be reversed, and the decree in all other respects affirmed, with costs to the appellee.

*Reversed.*